ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona
VINCENT Q. KIRBY
Assistant U.S. Attorney
Arizona State Bar No. 06377
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona  85004
Telephone:  602-514-7500
Email: Vincent.Kirby@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-03-0355-PCT-SMM |
|---|---|
| Movant, | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| vs. | |
| Branden Pete, | |
| Respondent. | |

The United States Attorney, by and through undersigned counsel, respectfully requests that Court at the very least impose the same 708 month sentence that it ordered in 2014 although the government still supports the original life sentences for Counts 1, 2, 4 and 7.  This request is based on the attached Memorandum of Points and Authorities.

Respectfully submitted this 5th day of May 2017.

ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona

*S/Vincent Q. Kirby*
VINCENT Q. KIRBY
Assistant U.S. Attorney

## MEMORANDUM OF POINTS AND AUTHORITIES

The defendant is once again before the Court for resentencing in light of *Miller v. Alabama*, 132 S.Ct. 2455 (2012) which prohibits juveniles from facing *mandatory* life sentences but holds the sentencing court retains the discretion to again impose life sentences if appropriate.  This Court previously resentenced the defendant after considering the guidance of *Miller* and imposed a sentence of 708 months.[1]  Later the Ninth Circuit ruled that the defense should have been allowed to conduct a new psychological evaluation.  The defendant is once again before the Court for sentencing.

## II.    Nature of the Case; Course of Proceedings.[2]

Hoskie James, Harris James and Irvin Cepi were initially charged by Complaint on March 10, 2003.  (CR 1.)  On April 8, 2003, an Indictment charged the three with Count One Murder, First Degree, Count Two Felony Murder - Kidnaping, Count Three Kidnaping, Count Four Felony Murder - Aggravated Sexual Abuse, Count Five Aggravated Sexual Abuse, Count Six Aggravated Sexual Abuse Resulting in Death and Count Seven Conspiracy to Commit Murder.  (CR 27.)

Co-defendants Hoskie and Harris James later plead guilty to reduced charges and agreed to testify at trial.  (CR 83.)  The third adult defendant, Irvin Cepi, was convicted

[1] The Bureau of Prisons has calculated a release date of May 1, 2054 when the defendant will be approximately 69-years-of-age

[2] CR refers to the criminal docket.

- 2 -

of First Degree Murder as well as all other counts and was sentenced to life imprisonment.  (CR 90, 114.)

Defendant, who was initially charged as a juvenile and later ordered transferred to adult status, was added by way of a superseding Indictment on March 30, 2005.  (CR 152.)  He later filed a motion to suppress his statements and challenged the voluntariness of his statements.  (CR 172.)  The government responded and an evidentiary hearing was held on August 16, 2005.  (CR 173, 186.)  The motions were denied.  (CR 210.)

Jury trial commenced on October 25, 2005.   (CR 245.)   Defendant was subsequently found guilty of Count One, the lesser included offense of Second Degree Murder, Count Two Felony Murder - Kidnaping, Count Three Kidnaping, Count Four Felony Murder - Aggravated Sexual Abuse, Count Five Aggravated Sexual Abuse, Count Six Aggravated Sexual Abuse Resulting in Death and Count Seven Conspiracy to Commit Murder.  (CR 251.)  He was later sentenced to life imprisonment on Counts one, two, four and seven to run concurrently, with a 5-year term of supervised release to follow; assessed $400 and ordered to pay restitution of $4,688.04.  (CR 302.)

Defendant appealed his conviction, which was affirmed on May 8, 2008.  The Supreme Court denied his petition for writ of certiorari on October 6, 2008.   Because of the Supreme Court's decision in *Miller v. Alabama*, 132 S.Ct. 2455 (2012), this Court conducted a new sentencing on July 22, 2014 and imposed a term of 708 months incarceration.  The defendant appealed and the Ninth Circuit ordered another sentencing hearing.  *United States v. Pete*, 819 F.3d 1121 (9th Cir. 2016).

1

**B**.       **Statement of Facts.[3]**

On May 18, 2002, the last day she was seen by her family, Charlotte Brown was hitchhiking on the Navajo Indian Reservation, along Route 264 near Steamboat, AZ.  (RT 10/26/05 19, 52-3.)  Defendant along with Hoskie James, his son Harris and Irvin Cepi gave her a ride.  (RT 10/26/05 54.)  They soon turned off on a back road and at some point stopped the car and everyone exited.  (RT 10/26/05 57.)  As they stood around someone said, "let's go rape her."  (RT 10/26/05 58.)  Defendant grabbed her, took her to the ground and ripped off her clothing.  (RT 10/26/05 58-9.) With the victim being held by co-defendant Irvin Cepi, defendant forced sexual intercourse on her.  (RT 10/26/05 59-61.)   Once he finished, he held her down while Cepi climbed on top of her and engaged in sexual intercourse, followed by Hoskie James and then Harris James.  (RT 10/26/05 61-63.)

Defendant told her to get into the car, which she did, despite the fact that she was naked.  (RT 10/26/05 61.)  As they drove, someone said to kill her because she was going to tell on them.  (RT 10/26/05 64.)  They stopped at another location at which time defendant told the victim to get out of the car and lay on the ground.  (RT 10/26/05 65-6.)  She pleaded, "Please don't kill me," but Harris James held her legs and defendant held her as well, as Cepi picked up a foot and a half size rock and threw it on Charlotte's head.  (RT 10/26/05 66-7.)   She was struck in the face and bled profusely but was still

---

[3] RT refers to the trial transcript.

- 4 -

breathing.  (RT 10/26/05 67.)  Harris got scared and walked away but defendant grabbed another rock, and told Harris to throw it but he refused.  Defendant, with the rock above his head, brought it down on her face.  (RT 10/26/05 68-9.)

She was then dragged by defendant and Cepi to a ditch where she was entombed under a pile of rocks.  (RT 10/26/05 69.)  They took her clothing and left.  (RT 10/26/05 71.)  Later, at defendant's direction, the victim's clothing was set afire.  (RT 10/26/05 72.)

The crime went unreported until the FBI received information in August of 2002. (RT 10/27/05 9.)  Hoskie James was interviewed first on August 21, 2002, followed by Harris James and defendant.  (RT 10/27/10.)   Based on information provided, investigators traveled to a remote area near Jeddito, Arizona on the Navajo Reservation. (RT 10/26/05 112.)   On this occasion, what was believed to be a human pelvis was recovered.   (RT 10/26/05 113.)   After an analysis confirmed that it was human, investigators returned to the site and based on a strong odor of decomposition, found and recovered remnants of bone and hair, skull fragments and part of a jawbone with teeth. (RT 10/26/05 114, 124, 127.)  An earring recovered in the hair was later identified as the victim's.  (RT 10/26/05 157, 27-8.)  Mitochondrial DNA analysis confirmed that remains belonged to an individual related to the victim's mother and siblings.  (RT 10/26/05 174.)

The cause of death was ruled blunt force trauma to the head based on the medical examiner's analysis of her fractured skull fragments.  (RT 10/27/05 99-103.)

- 5 -

Defendant later confessed that he was with the others when they picked up the victim, later stopped the car, and each raped her.  (RT 10/27/05 34-6.)  He also reported that after the sexual assault, the victim threatened to tell the cops what had happened. (RT 10/27/05 36.)  Defendant claimed that co-defendant Cepi came up with the idea to kill her and that defendant hit her with a rock, as did Cepi, and then they dragged her to a ditch.  (RT 10/27/05 37.)   The defendant told the interviewing agent, three months after the murder, "I just hit her with the rock.  I just don't care."  (RT 10/27/05 37.)

**IV**.  **Argument**

Defendant was originally sentenced to mandatory life sentences for Counts Two Felony Murder - Kidnapping and Count Four, Felony Murder – Aggravated Sexual Abuse.  However, he was also sentenced to life imprisonment for Counts One, Second Degree Murder and Count Seven, Conspiracy to Commit Murder that did not mandate life sentences but rather were punishable by any term of years or for life.

*Miller v. Alabama*, 132 S.Ct. 2455 (2012), holds that juveniles should not automatically face mandatory life sentences but rather that a sentencer have the ability to consider "'mitigating qualities of youth.'" *Id*. 2467 (internal citations omitted).

During the defendant's resentencing in 2014, the Court, after considering all of the factors of youth made an individualized sentencing determination.  It decided not to impose a life sentence but rather calculated the defendant's life expectancy at 75 years and fashioned a sentence of 708 months which if he earned all his good time credits could lead to his release at age 69.

- 6 -

As the Court is aware, the defendant early on in life demonstrated anti-social behavior as evidenced by his criminal history.  While the defendant suffered a very disadvantaged upbringing, it fails to explain his horrendous conduct.  According to trial testimony, he was not the victim of peer pressure on this occasion.  (Testimony of Harris James – Exhibit A.)[4]  According to Harris, the defendant did not have to be dragged into the rape of Charlotte; rather he instigated the crime by ripping off her clothing and sexually assaulting her.  He then held her while Cepi raped her.

Further, James testified and provided the following factual scenario.  The defendant then ordered her into the car where she was forced to sit naked in the back with the defendant and Cepi. The defendants drove for a period of time and some distance. Certainly sufficient time for an individual to reflect upon his criminal actions and realize the errors of his way.  Not this defendant.  The car, driven by Hoskie James, stopped and the defendant and Cepi ordered the victim out of the car after she stated she was going to the police.

When it came time to kill the poor victim, the defendant pinned Charlotte to the ground despite her plea of, "please don't kill me" and allowed Irvin Cepi to smash a rock into her face, which resounded with a large crack, profuse bleeding and labored breathing.  The defendant without any prodding grabbed his own rock and smashed it into the victim at which point she became motionless and ceased breathing. He then

---

[4] This exhibit was submitted with the Government's sentencing memo filed 2/12/14. (Doc # 361.)

pressured Harris James to participate but he refused.  Hoskie James, Harris' father also declined to participate.

The defendant and Cepi dragged the Charlotte's body through a ditch, covered her body with rocks and left her alone in the desert not caring whether she might still be alive.  He also retained possession of her clothing and later told Harris James that they had to get rid of the evidence, which the defendant did by dumping the items into a fire.

The court will also recall that at the time of his arrest, 3 months after the murder, the intoxicated defendant threatened to blow up the arresting agent's house and kill his family. The defendant told the agent when discussing his role in the murder, "I just hit her with a rock.  I just don't care."

*Miller* also discussed the possibility of rehabilitation.  *Id*. At 2468.  However, this defendant has not shown much during his incarceration.  He has faced sanctions for possessing a dangerous weapon, possessing intoxicants, fighting destroying property, refusing to take an alcohol test in 2008.  He struck a staff member with his shoulder in 2009. In 2011, he again possessed a dangerous weapon.  The defendant burned a hole in the exterior window of his cell, set a fire in the Special Housing Range and refused a work/program assignment in 2012.  Because of this repeated misconduct, the defendant was transferred from one USP to USP Florence, CO to be placed in its Special Management Unit, a program that deals with problem inmates, in September 2012.  Even while in this program, he again destroyed property in November 2013.

Even after he was sentenced in 2014 to less than a life term and was eligible to receive good time credits that could reduce his sentence, he continued to flaunt the prison rules.  In February 2015, he was ordered to return to general population from the SHU after his claim that he had been threatened because of his crimes could not be substantiated.  He refused and was sanctioned.  On January 19, 2016, the defendant was searched and a prison made syringe was found in his pant pocket.  He was docked 41 days of good time credit, lost the use of the phone and visitors for one year.  (PSR ¶ 89.)

The Court also counsels that the sentencing court should take into consideration the circumstances of the crime and should look at the extent of the juvenile's participation, and any family or peer pressures.  *Id*. 2468.  The defendant was sixteen and one-half years of age when he committed two grievous offenses against Charlotte Brown. He did so freely and without being pressured by others.  Most troubling is the fact that the defendant had time to reflect on the attack he had just perpetrated against the victim as they drove down the highway.  When it was time to kill her, the defendant without any hesitation, became one of the two instigators.  No one goaded him into stoning her.  He also attempted to get Harris James involved but James declined.  The defendant also denied Charlotte's family the opportunity to bury her by secreting her beneath a pile of rocks where she lay for several months and then only a few fragments of bone were recovered.  He also held on to her clothes and destroyed the evidence.  He was not under any undue influences from others.

A review of the sentencing factors under 18 U.S.C. § 3553(a)(1) and (2) provides overwhelming support a reimposition of the 708-month sentence.  There are few crimes more serious than murder and add the sexual assault of a woman who was only looking for a ride home.  The defendant was a clear and active participant in both crimes, especially the murder. There is clearly a need for deterrence for both the defendant and others.  The community also needs protection from the defendant who was capable of acting in such a cold-blooded fashion as to be able to stone a woman to death despite her plea to live.  His time in custody does not establish that he is no longer a threat.  Rather, it demonstrates that the defendant continues his anti-social conduct in a structured environment and remains who he was at time the time of the murder.

The damage inflicted upon Charlotte's family is incalculable.  For months, they had no idea what happened to her.  The letters from the family attempt to explain the magnitude of the loss they suffered.  The victim left behind a daughter whom the victim was deprived of watching grow into adulthood, marry and have children. The daughter was also deprived of the special bond between a mother and daughter.

The defendant has shown no remorse.  At the last resentencing in 2014, he lamented how difficult life had been for him in prison.  He failed to mention anything about Charlotte, what he had done to her or how she and her family suffered until the government had pointed out that fact.  (RT 7/22/14 24-30; 37.)  The Court even commented on the lack of remorse as well: "This is one of the most cruel, deliberate, heinous acts I have seen in over 40 years on the criminal justice system.  And the

defendant is totally lacking in remorse except for his sort of begrudging apology to the family here this afternoon that was very late in the making. ….. It is hard to find a more egregious or brutal factual scenario as I have noted, particularly as that of the defendant's participation in this case." (RT 7/22/14 41-42.)

Charlotte's suffering at the hands of the defendant supports an upward departure for cruel, heinous and depraved under U.S.S.G. § 5K2.8 (Extreme Conduct). she was murdered to conceal the sexual assault under U.S.S.G. § 5K2.9 (Criminal Purpose); and his use of the rock to end the victim's life is a basis for departure under U.S.S.G. § 5K2.6 (Weapons and Dangerous Instruments).

The defense has submitted a report by Dr. Marc. Walter who recently evaluated the defendant.  For the most part, it mirrors the original report of Dr. Rosenzweig who conducted an evaluation as part of the juvenile transfer hearing.  The current report reaches the same conclusion that the defendant is a "salvageable young man" but that cannot be a guarantee  Significantly, Dr. Walter notes that several of the tests he administered lead him to conclude that; "Mr. Pete is intact in his ability to reason and problem solve, either verbally or visually, in *structured* situations.  However, his impaired performance on the WCST illustrates, when there in minimal structure he has great difficulty." (12/8/16 Dr. Walter Report p. 5.)(emphasis added.)  Additionally, he reports that the defendant; "shows the most impairment in his ability to attend to, remember, and learn new verbal information." (12/8/16 Dr. Walter Report p. 5.)  That should not give the Court comfort that the defendant will be able to successfully integrate

into the community where there will a completely new way of life for him to learn and adapt.  The report points out that it took the defendant many years to adapt to the structured environment of prison.  (12/8/16 Dr. Walter Report p. 5.)   The court and the community do have the luxury of waiting many years to adapt to lift outside the walls.

As the Court is aware, the defendant has struggled in the very structured environment of the Bureau of Prison.  When an individual is released to the community, there may be some structure in a halfway house but after that, the person is on their own. The defendant does not have a family environment that will be able to provide any significant structure and even if they could, there is no guarantee that the defendant would accept it.  Most concerning is that there is and can be no guarantee that the defendant will not return to his life of substance abuse, which would clearly render him a danger to the community.

The Ninth Circuit has affirmed the imposition of life sentences for juveniles in similar settings after *Miller*.[5]  In *Bell v. Uribe*, 748 F.3d 857 (9th Cir. 2014), the Court affirmed a life sentence for a 16 year-old defendant who murdered her mother. The jury concluded that the murder was committed while lying in wait, was intentional and involved torture. *Id*. at 860. The sentencing judge characterized

---

[5] In this District, two other similarly situated defendants who were juveniles at the time of the murders have been resentenced to life imprisonment after *Miller*. United States v. Orsinger, CR-01-1062-PCT-DGC  and  CR-01-1072-PCT-DGC  and  United States v. Briones, CR 96-00464-004-PHX-DLR.  Orsinger was 16 years of age at the time and Briones was 17 years and 11 months.

the defendant's crime as "shocking," "heinous," and "unthinkable," "demonstrating a cold, heartless, and uncivilized attack on [the defendant's] mother." *Id*. at 869. The judge considered mitigating evidence relating to the defendant's education, health, substance use history and lack of a prior criminal record. Ultimately, the court "concluded that the impact on the victim's family…as well as the facts of the crime, including the special circumstances found by the jury of lying in wait and inflicting torture on the victim warranted a sentence of life in prison without the possibility of parole." *Id*. at 870. This Court held that because the judge considered "both mitigating and aggravating factors under a sentencing scheme that affords discretion and leniency, there is no violation of Miller." *Id*.

Similarly, in *United States v. Luong*, 610 Fed.Appx. 598, 600 (9th Cir. 2015), a case involving a 17-year old defendant who shot a victim intentionally and in the absence of a struggle, the district court considered the facts of the victim's murder, together with the defendant's age and upbringing.  The court imposed a within-Guidelines sentence of life in prison. The Court held that "[t]he sentence, which was not mandatory, does not violate the Eighth Amendment." 610 Fed.Appx. at 600. See also *Adams v. United States*, 583 F. Appx 658, 659 (9th Cir. 2014) (affirming aggregate sentence of 516 months for juvenile murderer where "the district court exercised its sentencing discretion after considering several mitigating and aggravating factors; it weighed Adams's 'deplorable childhood'

- 13 -

against his prior criminal history and his 'total indifference to life.'").  Finally, in *United States v. Bryant*, 609 Fed.Appx. 925, 927 (9th Cir. 2015) the Court found that the sentencing judge had properly taking into account "how children are different" prior to imposing an aggregate sentence of 80 years for murder and numerous weapons offenses supporting a VICAR conviction.  *Id*. 927.

While the Court is obligated to consider the factors surrounding a juvenile, it is no less obligated to consider all of the 18 U.S.C. §3553(a) factors.  It previously weighed aggravating and mitigating factors, including Defendant's youth and attendant circumstances, and the facts and circumstances of the crimes.  There is no substantial additional information that the Court did not have at the time that it concluded that a 708 month sentence was appropriate.  The Court should once again impose the same sentence given the shocking and horrible death suffered by Charlottes at the hands of the defendant.

Respectfully submitted this 5th day of May 2017.

ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona

*S/Vincent Q. Kirby*
VINCENT Q. KIRBY
Assistant U.S. Attorney
